UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BENJAMIN LOUIS COCKRUM                    CIVIL ACTION

VERSUS                                    NO.  13-4860

SIMON ELLIS, ET AL.                       SECTION "F"(5)

REPORT AND RECOMMENDATION

Before the Court is a motion to dismiss filed by defendants,
Sgt. Ellis Simon,[1] Lt. John Tullos, Lt. Col. Mike Todd, Assistant
Warden Wayne Cook, Warden Robert Tanner, Kim Warner, and Dr.
Christopher Lartigue, along with a memorandum in opposition to the
motion to dismiss and an amended complaint filed by plaintiff,
Benjamin Cockrum.[2] This motion and the entire matter were referred
to the undersigned United States Magistrate Judge to conduct a
hearing, including an evidentiary hearing, if necessary, and to
submit proposed findings and recommendations for disposition
pursuant to **Title 28 U.S.C. § 636(b) and (c), § 1915e(2), and
§1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and(2)**.

_____

[1] Defendant's actual name appears to be Ellis Simon, as he is
referred to in defendants' motion to dismiss.

[2] Motion to Dismiss, Rec. Doc. No. 16; Memorandum in
Opposition, Rec. Doc. No. 17, Amended Complaint, Rec. Doc. No. 18.

Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.   Facts

Plaintiff, an inmate housed in the Rayburn Correctional Center, filed the instant complaint pursuant to 42 U.S.C. §1983. Plaintiff's complaint stems from the discontinuation of an anxiety medication, Wellbutrin.  The following facts and allegations are gleaned from plaintiff's original and amended complaints and his opposition to the motion to dismiss.[3]

On August 20, 2012, plaintiff and Simon were involved in a matter concerning plaintiff's medication.  As Simon was conducting a shakedown of plaintiff, another officer observed half a pill fall to the floor.   The pill was identified by RN Josh Goff as Wellbutrin, which plaintiff is prescribed.  As a result of the incident, two rule violation reports were issued, one for a contraband violation and one for defiance and aggravated

---

[3] In general, a court may look to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint" when reviewing a 12(b)(6) motion to dismiss.  Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir.2010), citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir.2000).  The United States Fifth Circuit Court of Appeals has held that in a case filed by a pro se plaintiff, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983).  Therefore, a pro se litigant's supplemental filings that "embellish[] the original complaint's averments" should be considered when ruling on dispositive motions.  Id. Accordingly, plaintiff's opposition and subsequent amended complaint is properly considered part of the complaint in this matter and will be considered in connection with the instant motion.

disobedience.   After a hearing on August 22, 2012, plaintiff pleaded guilty to these rule violations.[4] He was sentenced to cell confinement for four weeks.

On August 24, 2012, defendant Simon observed on the tier monitor that plaintiff appeared to be snorting something up his nose.  Simon and Tullos conducted a shakedown of plaintiff's cell, and found a small amount of white powder residue on the top bunk of his cell, a tube made from a flex pen that appeared to have been used to snort the substance, and two wet washcloths.  Simon noted in his unusual occurrence report that the residue appeared to be the drug Wellbutrin, which is prescribed to plaintiff.  Plaintiff received a rule violation report accusing him of three infractions: theft for having more than one washcloth in his cell; property destruction for torn up face cloths with ink all over them; and general prohibited behavior, threat to commit a violation for a tube made from a flex pen that appeared to have been used to snort a substance. Disciplinary court proceedings were held on August 27, 2012 before Lt. Col. Mike Todd as chairman, and plaintiff was represented by substitute counsel, George Wade.  Plaintiff pleaded guilty to the theft and property destruction charges, and the general prohibited behavior charge was dismissed.  He received a sentence of ten days in isolation.[5]

---

[4] Rec. Doc. No. 17, Plaintiff's Memorandum in Opposition to Motion to Dismiss, Exhibits C and J.

[5] Rec. Doc. No. 17, Plaintiff's Opposition to Dismiss, Exhibits A and B.

On or about August 31, 2012, plaintiff attended a routine psychiatric evaluation with a new psychiatrist, Dr. Lartigue.  Kim Warner, a social worker and the Mental Health Director for Rayburn Correctional Center, was also present for the evaluation. Plaintiff claims that Dr. Lartigue pulled a piece of paper from his file and stated, "Well Benjamin, seems here you got a problem with snorting your medication Wellbutrin."[6]   Plaintiff recounted his most recent disciplinary proceedings of August 27 and told Dr. Lartigue that he was not convicted of any such charge.  Plaintiff states that Warner returned to the room five minutes later with a sheet of paper and told Dr. Lartigue that plaintiff was found guilty of the violation.  According to plaintiff, Dr. Lartigue also stated "and on top of that Benjamin my records show your [sic] only taken [sic] your Wellbutrin 1/3rd of the time anyway."[7]   Although plaintiff told Dr. Lartigue that "all of his information was wrong," Dr. Lartigue chose to discontinue plaintiff's Wellbutrin prescription.  Plaintiff claims he has been on both Wellbutrin and Lithium for the past twenty-six years.[8]

Plaintiff states that he was not given any other medication at the time the Wellbutrin was discontinued.  According to plaintiff, he was next seen on November 30, 2012 "for a routine evaluation and after 7 days of hunger strike and letters stating that plaintiff

---

[6] Rec. Doc. No. 1, Complaint, page (6).

[7] Id.

[8] Id. at page (7).

was staying up for days at a time unable to sleep."[9]  He was given a prescription for Sinequan 5ml.  He asked Dr. Lartigue to reconsider his decision to discontinue the Wellbutrin, but Dr. Lartigue told him the decision was final.  On his January 25, 2013 visit to Dr. Lartigue, he complained of shaking and nervousness.  Dr. Lartigue prescribed Inderal for the shaking and raised the Sinequan to 10ml.[10]  On April 26, 2013, plaintiff had an opportunity to present evidence to Dr. Lartigue of the documents plaintiff claimed supported his position that his medication was wrongly implicated, but Dr. Lartigue still believed he had been abusing his Wellbutrin and refused to reinstate his prescription.[11]

By amended complaint, plaintiff further alleged that Dr. Lartigue failed to monitor his Lithium levels by blood tests every 90 days. He complained that he went more than six months without a blood test.[12]

Plaintiff alleges that Simon and Tullos violated his constitutional rights based on the false and fabricated disciplinary report of the August 24, 2012 incident.  He alleges that Todd violated his constitutional rights during the August 27, 2012 disciplinary hearing by refusing plaintiff's request to test the unidentified "white powder."  He claims that his due process rights were violated at the disciplinary hearing because the white

---

[9] Id.

[10] Id. at page (8).

[11] Id.

[12] Rec. Doc. No. 18.

powder itself was not tested or presented into evidence.   He alleges that Warden Tanner and Assistant Warden Cook violated his constitutional rights by denying his administrative remedies procedure (ARP) complaints.   And finally he alleges that both Warner and Dr. Lartigue were deliberately indifferent to his medical needs.   Plaintiff requests monetary damages and injunctive relief.

## II. Motion to Dismiss

The defendants filed a motion seeking dismissal of plaintiff's claims against them for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).   Defendants also argue that plaintiff has failed to meet the heightened pleading requirement necessary to overcome a qualified immunity defense.

Plaintiff filed an opposition to this motion along with supporting documentation of rule violation reports and ARP responses.   He claims that he has made sufficient allegations to support his claims for relief and that he has defeated defendants' entitlement to qualified immunity.

## III. Legal Standard - Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   The court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff.   In re Great Lakes Dredge & Dock Co., 624 F.3d 201, 210

(5th Cir. 2010); Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." Guidry, 512 F.3d at 180 (quotation marks omitted). The United States Supreme Court also has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Iqbal, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more

than a sheer possibility" that the defendant has violated the law as alleged. See Id. Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards. Bohannan v. Doe, __ F. App'x __, 2013 WL 2631197, at *4 (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007). In the prisoner context, in Taylor v. Gibson, 529 F.2d 709 (5th Cir.1976), the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

Id., 529 F.2d at 713-14; see also Estelle v. Gamble, 429 U .S. 97, 106 (1976).

## IV.  Failure to state a claim

### A.  False disciplinary charges and inadequate disciplinary proceedings

Plaintiff claims that Simon knowingly made false statements that the white powder was Wellbutrin in regard to plaintiff's disciplinary reports.  He claims that Tullos knowingly and willingly participated in fabricating false evidence and false reports.  He also claims that Todd refused to allow plaintiff to have the white powdered substance itself tested and introduced as

part of the disciplinary hearing.  Plaintiff's claims that his constitutional rights were violated based on false and fabricated disciplinary charges and inadequate disciplinary proceedings fail to state a claim of violation of his constitutional rights and must be dismissed.

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists.  In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted). Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974).

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir.1997). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at

stake is the right to be free from confinement at all." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit held in <u>Madison</u> that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." <u>Madison</u>, 104 F.3d at 768; <u>accord</u> <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008); <u>Dixon v. Hastings</u>, 117 F. App'x 371, 372 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir.2000).  In <u>Hernandez</u> and <u>Madison</u>, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. <u>Hernandez</u>, 522 F.3d at 563; <u>Madison</u>, 104 F.3d at 768.

Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. <u>Sandin</u>, 515 U.S. at 484.

In the instant case, plaintiff's allegations establish that the action taken against him based upon the allegedly false disciplinary charges and inadequate disciplinary hearings was a sentence of ten days in isolation.  This action does not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process of the type described in <u>Wolff</u> were required. <u>Sandin</u>, 515 U.S. at 484; <u>Madison</u>, 104 F.3d at 768; <u>see</u> <u>Johnson v.</u>

<u>Livingston</u>, 360 F. App'x 531, 532 (5th Cir.2010) (<u>citing</u> <u>Malchi v.</u> <u>Thaler</u>, 211 F.3d at 958) ("Loss of privileges and cell restriction do not implicate due process concerns."); <u>Hernandez</u>, 522 F.3d at 563 (distinguishing the "extreme conditions" described in <u>Wilkinson</u> and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits ... is by no means an atypical prison experience"); <u>Dixon</u>, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); <u>Payne v.</u> <u>Dretke</u>, 80 F. App'x 314, 314 (5th Cir.2003) ("commissary and recreation restrictions [as disciplinary punishment] ... do not implicate a liberty interest under the Due Process Clause").

Even if some process might be required for these sorts of prison disciplinary penalties, it is clear that plaintiff received sufficient procedural rights under <u>Sandin</u>.  He was given a written statement notifying him of the charges against him.  He received a hearing before the disciplinary board.  He was provided with an opportunity to make a statement on his own behalf.

In addition, the case law is clear that an inmate's allegation that a prison official asserted false disciplinary charges against him fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing. <u>Harris v. Smith</u>, No. 482 F. App'x 929 (5th Cir. 2012) (<u>quoting</u> <u>Collins v. King</u>, 743 F.2d 248, 253–54 (5th Cir.1984)); <u>accord</u> <u>Doolittle v. Holmes</u>, 306 F. App'x 133, 134 (5th Cir. 2009); <u>Moore</u>

v. Butler, 211 F.3d 593, 2000 WL 329165, at *1 (5th Cir. Mar. 17, 2000); Landor v. Lamartiniere, No. 12-103-BAJ-SCR, 2012 WL 3777157, at *7 (M.D.La. Aug. 1, 2012), report & recommendation adopted, 2012 WL 3777149 (M.D.La. Aug. 29, 2012); Price v. Quarterman, No. 5:09cv153, 2010 WL 715536, at *4 (E.D. Tex. Feb. 23, 2010).

In the instant case, plaintiff had a disciplinary hearing on the charges arising out of the August 24, 2012 incident.  He alleges that the disciplinary proceedings he received at Rayburn were inadequate because he was not permitted to conduct testing on the white powdered substance found in his cell.  However, his testimony establishes that the hearings were adequate under Sandin in light of the penalties he received.  Furthermore, as plaintiff points out, he was not convicted of any charge relating to the white powdered substance found on August 24, 2012.  Thus, plaintiff fails to state a claim that his due process rights were violated because of allegedly false disciplinary charges. No constitutional violation has been stated in this case concerning plaintiff's disciplinary charges or proceedings, which were adequate under Sandin.

###   B.   Access to ARP/First Amendment Access to Courts

Plaintiff asserts claims against Assistant Warden Cook and Warden Robert Tanner for denying his ARP complaints.  Plaintiff alleges that Assistant Warden Cook denied him a fair and impartial review of his ARP claim, because on December 5, 2012 Cook issued a response denying plaintiff's claim regarding Dr. Lartigue's improper termination of his Wellbutrin prescription. Plaintiff

alleges that Warden Tanner denied him the right to redress his grievances related to the August 27, 2012 disciplinary proceedings through the ARP system, when Tanner rejected two of plaintiff's ARP requests finding, "disciplinary matters are not appealable through the Administrative Remedy Procedure." Because plaintiff has failed to state a claim of any violation of his constitutional rights, the claims against these defendants must be dismissed.

The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having ... grievances resolved to his satisfaction. As plaintiff relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir.2005) (citing Sandin, 515 U.S. at 484; Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir.1995)); accord Bell v. Woods, 382 F. App'x 391, 392 (5th Cir.2010); Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010). "Additionally, [plaintiff] could not show any injury from the failure [adequately] to consider his grievances because the alleged [actions of jail officials of which] he complained ... in the grievances did not implicate his constitutional rights." Bell, 382 F. App'x at 392.

In the constitutional sense, an ARP, at most, may be viewed as a means of effectuating plaintiff's First Amendment right to petition the government for redress of grievances. In this instance, plaintiff's grievances were received and processed through the ARP, although the ARP did not end with the results he wanted. The Fifth Circuit has held that allegations that a prison

13

official has failed adequately to follow particular prison rules, regulations or procedures, such as an ARP, cannot support a Section 1983 claim, without an independent constitutional violation. McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir.2012) (citing Dist. Attorney's Ofc. v. Osborne, 557 U.S. 52, 67 (2009); Jackson v. Cain, 864 F.2d 1235, 1251–52 (5th Cir. 1989); Neuwirth v. La. State Bd. of Dentistry, 845 F.2d 553, 557 (5th Cir.1988)); Patel v. Haro, 470 F. App'x 240, 244 (5th Cir.2012); Stanley v. Foster, 464 F.3d 565 (5th Cir.2006). "The failure of the prison to follow its own policies, including a failure to address prisoner grievances, is not sufficient to make out a civil rights claim." Richardson v. Thornton, 299 F. App'x 461, 463 (5th Cir.2008) (citing Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir.1996)).

Plaintiff was not denied access to the courts in violation of the First Amendment.  Prisoners have a First Amendment right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 828 (1977); Dickinson v. TX, Fort Bend County, 325 F. App'x 389, 390 (5th Cir.2009); Sandoval v. Johns, 264 F.3d 1142, 2001 WL 822779, at * 1 (5th Cir.2001); McDonald v. Steward, 132 F.3d 225, 230 (5th Cir.1998); Degrate v. Godwin, 84 F.3d 768, 768–69 (5th Cir.1996). However, this constitutional right is not without limitations. "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Vaccaro v. United States, 125 F.3d 852, 1997 WL 574977, at * 1 (5th Cir.1997) (quotation omitted) (emphasis added); accord Norton v.

14

<u>Dimazana</u>, 122 F.3d 286, 290 (5th Cir.1997); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir.1996). Significantly, a prisoner's First Amendment right in this regard is limited to the presentation of a non-frivolous claim or argument to the court. <u>Lewis v. Casey</u>, 518 U.S. 343, 352-53 (1996).

In addition, to state a claim that his constitutional right of access to the courts was violated, plaintiff must demonstrate that his position as a litigant was actually prejudiced. <u>Id</u>. at 356; <u>Cochran v. Baldwin</u>, 196 F. App'x 256, 257-58 (5th Cir.2006); <u>Smith v. Polunsky</u>, 233 F.3d 575, 2000 WL 1468717, at *1 (5th Cir .2000); <u>Eason</u>, 73 F.3d at 1328.  Plaintiff has not established the essential elements of a First Amendment claim detailed above. He has had the ability to prepare and submit legal documents to the courts, and no actual prejudice to his position as a litigant has occurred. The Court has received and fully considered all of plaintiff's submissions. His claims have been the subject of this Court's full evaluation.  Plaintiff has neither alleged nor shown any actual injury to his position as a litigant in these matters.

## C.  Denial of adequate medical care

### 1.  Kim Warner

Plaintiff asserts that Warner was deliberately indifferent to his serious medical needs in falsely informing Dr. Lartigue that plaintiff had been found guilty of abusing Wellbutrin, which resulted in Dr. Lartigue discontinuing his medication.

Based on the facts alleged by plaintiff, Dr. Lartigue began the session with plaintiff by looking at information in a file and stating it appeared plaintiff had a problem with snorting

Wellbutrin.  Obviously, Dr. Lartigue already had documentation in plaintiff's file indicating plaintiff was abusing Wellbutrin. Therefore, Dr. Lartigue had available for consideration information completely independent of Warner, and did not necessarily rely on Warner's subsequent statement concerning plaintiff's being found guilty of abusing Wellbutrin.  Furthermore, as plaintiff raised in his opposition, he has a conviction for contraband involving Wellbutrin based not on the disciplinary proceedings of August 27, 2012, but rather, based on disciplinary proceedings of August 22, 2012.  It is possible that Warner was referring to this contraband conviction and not the August 27, 2012 convictions disputed by plaintiff.

Regardless, even accepting as true plaintiff's allegation that the information Warner relayed to Dr. Lartigue was false, plaintiff has failed to state a claim of violation of his constitutional right based on Warner's actions.  Non-medical personnel engage in deliberate indifference where they intentionally deny or delay access to medical care.  Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992), citing Estelle v. Gamble, 429 U.S. 97 (1976).  The facts alleged do not show that Warner denied plaintiff access to medical care.  Plaintiff has not alleged that Warner had any authority to give medical care.  Plaintiff has not alleged that Warner recommended that plaintiff's Wellbutrin prescription be discontinued.  The facts do not suggest that Warner disregarded or ignored plaintiff's medical needs.  Nor do the facts show that Warner delayed in any way plaintiff's access to health care simply by relaying information of a violation to Dr. Lartigue.  See Derek

16

Josey v. David Rock, No. 11-0028, 2013 WL 1500435 at *10 (N.D.N.Y. March 19, 2013), report & recommendation adopted, 2013 WL 1501029 (N.D.N.Y. Apr. 10, 2013).

Finally, plaintiff does not allege that Warner had any personal involvement in monitoring plaintiff's lithium levels or ordering blood tests.  Therefore, plaintiff's allegations do not show that Warner was deliberately indifferent to his medical needs.

### 2.   Dr. Lartigue

Plaintiff claims that Dr. Lartigue exhibited deliberate indifference to his serious medical condition, an anxiety disorder, when he abruptly discontinued plaintiff's prescribed medication Wellbutrin.  Plaintiff also alleges that the failure to evaluate his Lithium levels for more than six months constituted deliberate indifference. Defendants argue that his Eighth Amendment medical claim should be dismissed because plaintiff has not shown deliberate indifference to any serious medical need, and in any event, Dr. Lartigue is entitled to qualified immunity.

The standard of conduct for providing medical care to inmates under the Eighth Amendment was clearly established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976).  In Estelle, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.  Id. at 104.  This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs.  It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally

17

interfering with the treatment once prescribed.  <u>Id</u>.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.  <u>Id</u>.

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims.  <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  Thus, an inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  The plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  <u>Cooper v. Johnson</u>, 353 F. App'x 965, 967 (5th Cir. 2009) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991)); <u>accord Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, a plaintiff must establish that the defendant possessed a culpable state of mind.  <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive

18

risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'" <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009); <u>Bohannan v. Doe</u>, 2013 WL 2631197, at *6 (5th Cir. June 12, 2013) (citing <u>Gobert v. Caldwell</u>, 463 F.3d 339, 346 (5th Cir. 2006)). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

Plaintiff's burden is twofold. He must show that he had a serious medical condition and that it was met with deliberate indifference. Other than a conclusory statement that plaintiff has not shown a serious medical need, defendants do not otherwise address that issue in brief. Thus, for purposes of this motion at the initial screening stage, the court will assume, without finding, that plaintiff's anxiety disorder which he alleges has been treated for twenty-six (26) years with antidepressant medications including Wellbutrin and Lithium, is a serious medical need, and proceed to address defendants' argument regarding whether the facts show that need was met with deliberate indifference.

Defendants argue that plaintiff has failed to show deliberate indifference by Dr. Lartigue. They contend the facts do not support a finding that Dr. Lartigue was deliberately indifferent

because Dr. Lartigue continued to treat plaintiff for his anxiety. Dr. Lartigue's treatment included several additional routine evaluations, and the addition of two new medications, Inderal and Sinequan, to treat plaintiff's symptoms. Defendants conclude that "the facts that the plaintiff was taking medication for sleep, anxiety, and for any of the spectrum of issues treated by Lithium, and because the plaintiff was seen by Dr. Lartigue during routine evaluations, there is no basis upon which to conclude any of plaintiff's mental health needs...[] were met with deliberate indifference."[13] Defendants contend that while plaintiff may disagree with Dr. Lartigue's decision to discontinue Wellbutrin, this difference of opinion is not indicative of deliberate indifference and thus does not constitute a constitutional violation.

Even broadly construing the allegations and accepting the facts alleged by plaintiff as true, the court agrees that plaintiff has failed to establish deliberate indifference.  On the evidence presented, Dr. Lartigue made a considered medical decision to remove plaintiff from Wellbutrin based on his undisputed belief that plaintiff was not taking the medicine as prescribed. Plaintiff states that his Wellbutrin was discontinued because Dr. Lartigue believed plaintiff could have been abusing the medication by snorting it and also that plaintiff was noncompliant in only taking it one-third of the time. These medical considerations factored

---

[13]   Rec. Doc. No. 16, Motion to Dismiss, p. 12.

into Dr. Lartigue's reasoned judgment to discontinue plaintiff's Wellbutrin.

Prison medical providers, in treating inmates, are generally permitted to institute and/or discontinue methods of treatment as they deem best; however, a discontinuation or withholding of necessary medical treatment as punishment would be improper and could constitute deliberate indifference. Estelle v. Gamble, 429 U.S. at 104; Estes v. Rahorst, No. 11-0023, 2013 WL 5422874, * 5 (N. D. Tex. September 27, 2013). Here, Dr. Lartigue deemed it best in his medical opinion, given the circumstances, to discontinue plaintiff's Wellbutrin. That act was clearly a medical decision, and not any form of punishment. In fact, plaintiff does not allege that Dr. Lartigue sought to punish him in any way by withholding the Wellbutrin. At best, plaintiff is claiming that Dr. Lartigue's belief that he was not taking the medicine as prescribed was unfounded, and that Dr. Lartigue should have done more investigation himself to see if the accusations were true. However, at most, this would state a claim for negligent or erroneous medical treatment or judgment, which is not actionable under §1983. Estelle, supra; Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted). Furthermore, as defendants argue, the fact that plaintiff disagrees with Dr. Lartigue's course of treatment for his anxiety disorder and the doctor's subsequent refusal to reinstate plaintiff's drug of choice, is insufficient to establish an unconstitutional denial of medical care. Norton v. Dimanzana, 122 F.3d at 292; see also Rowe v. Norris, 198 F. App'x

579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication).

As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. See Youngberg v. Romeo, 457 U.S. 307, 322-23, 102 S.Ct. 2452, 2461-62, 73 L.Ed.2d 28 (1982). The facts show that after plaintiff's Wellbutrin was discontinued, Dr. Lartigue continued to treat plaintiff on a regular basis for his complaints associated with his anxiety, and maintained and prescribed various other medications to treat plaintiff's anxiety. Plaintiff has failed to allege facts sufficient to support a claim of deliberate indifference against Dr. Lartigue for discontinuing his Wellbutrin.[14]

By amended complaint, plaintiff also alleges that Dr. Lartigue's failure to check his Lithium level by blood tests during a six-month period constituted deliberate indifference. He asserts that in the 26 years he has been on Lithium, his levels were checked every 60-90 days. Plaintiff does not dispute, however, that his Lithium level was continually monitored by Dr. Lartigue. In fact, plaintiff's Lithium levels were checked in February, June and December of 2012, and again in August 2013.

Plaintiff does not allege that Dr. Lartigue refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a

---

[14]Having concluded that plaintiff has failed to state a claim for which relief may be granted, the court need not address the qualified immunity defense raised by defendants.

wanton disregard for any serious medical needs. Instead, plaintiff's allegations show that he merely disagreed with Dr. Lartigue's medical judgment as to how often his Lithium levels should be checked. However, contentions like plaintiff's that amount to a disagreement with the exercise of medical judgment by a health care provider simply do not meet the criteria for alleging deliberate indifference. See Gobert, 463 F.3d at 346; Lee v. Rushing, 2013 WL 2462247 at *2 (5th Cir. 6/10/13). Even if the facts showed that Dr. Lartigue's medical treatment was negligent, negligent medical care does not constitute a valid § 1983 claim. Id.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that defendants' motion to dismiss be **GRANTED** and that the complaint filed by plaintiff, Benjamin Louis Cockrum, be dismissed with prejudice for failure to state a claim for which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.

§ 636(b)(1); <u>Douglass v. United Services Automobile Association</u>, 79

F.3d 1415, 1430 (5th Cir. 1996) (en banc).[15]

New Orleans, Louisiana, this __5th__ day of __November__, 2013.

ALMA L. CHASEZ
**UNITED STATES MAGISTRATE JUDGE**

---

[15]<u>Douglass</u> referenced the previously applicable ten-day period
for the filing of objections. Effective December 1, 2009, 28
U.S.C. § 636(b)(1) was amended to extend that period to fourteen
days.

24